WILLIAM F. ARMSTRONG & others[1] *vs.* PEABODY POLICE RELIEF ASSOCIATION, INCORPORATED & others.[2]

Essex.    April 6, 1966. — June 6, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Fraternal Benefit Society.    Corporation,* Fraternal corporation.

A fraternal benefit corporation composed of employees and ex-employees of a city's police department, including both regular and reserve officers, and doing business on December 31, 1958, was subject to G. L. c. 176, § 45, as in effect before the effective date of St. 1958, c. 540, even though the corporation paid death benefits. [7]

---

[1] John J. Dullea, William F. Gromko, Robert P. Scahill.

[2] George Panagopoulos, Edward P. Surman, John J. Pierce, Joseph H. Fleming, Harry W. Karpinski, Gustav S. Swazyk, Robert J. Costello, as they are officers or directors of the Association.

An amendment of the by-laws of a fraternal benefit corporation subject to G. L. c. 176, § 45, as in effect before the effective date of St. 1958, c. 540, was not rendered inoperative by failure to file it with the Commissioner of Insurance until after the expiration of thirty days following its adoption. [8]

An amendment of the by-laws of a fraternal benefit corporation composed of employees and ex-employees of a city's police department, providing that where a reserve officer ceased to be a member of the department before becoming a regular officer he would automatically cease to be a member of the corporation, could not be validly applied retroactively to take away memberships in the corporation, and the rights and benefits thereof, from reserve officers who, while members of the corporation, had resigned from the department before the adoption of the amendment. [8–9]

BILL IN EQUITY filed in the Superior Court on August 20, 1963.

The suit was heard by *Ponte, J.*

*William E. O'Brine* for the plaintiffs.

*Paul J. Liacos* for the defendants.

KIRK, J. The plaintiffs appeal from a decree declaring that they are not members of the Peabody Police Relief Association (the Association). The evidence is not reported. We summarize the findings of fact made voluntarily by the judge.

The plaintiffs are former reserve officers in the Peabody Police Department (the department). They served as reserve officers for varying numbers of years, and each of them resigned from the department on different dates between June, 1950, and December, 1952. None of them was ever a regular officer in the department. While employed in the department, they became members of the Association, a Massachusetts corporation governed by G. L. c. 176. The Association afforded death and disability benefits upon the conditions of maintenance of membership and payment of dues. When the Association was originally formed in 1921, it offered a death benefit of $200, and disability benefits of $10 per week. Subsequently the benefits were substantially increased.

On December 30, 1952, the Association voted to amend its membership by-law. The amended by-law, as it affected

reserve officers, was adopted at a special meeting on March 30, 1953, and provided that "In the event of a reserve police officer ceasing to be a member of the Police Department before becoming a regular member of the Police Department, he automatically ceases to be a member of the Association." A copy of the amendment was filed with the Commissioner of Insurance on May 4, 1953. Although all of the plaintiffs had resigned from the department prior to the 1953 amendment, they continued to pay their dues to the Association, which accepted the payments and issued receipts acknowledging, until 1961, that they were members in good standing. In February, 1961, the Association remitted by check to the plaintiffs the dues which they had paid between 1953 and 1961. The plaintiffs returned the checks to the Association, uncashed. Since 1961 the Association has refused to accept the dues tendered by the plaintiffs.

Statute 1958, c. 540, § 1, amended the General Laws by striking out the contents of c. 176, the fraternal benefit society law, and revising it almost totally. Section 2 of c. 540,[3] however, exempted societies governed by former §§ 45-46D from the provisions of the new law. References in this opinion unless otherwise indicated are to sections of c. 176 as it appeared before St. 1958, c. 540.

Although originally controlled by G. L. c. 176, § 46, because of the limits on benefits, the Association no longer comes under that section since the benefits now exceed the § 46 limitations. The question is which section of c. 176 now governs the Association. The judge ruled that the Association was subject to former § 35 of c. 176, and found that a certified copy of the 1953 amendment was filed by the Association with the Commissioner of Insurance within

---

[3] "Any society as defined in chapter one hundred and seventy-six of the General Laws as in effect immediately preceding the effective date of this act which is transacting business on December thirty-first, nineteen hundred and fifty-eight, under the authority of sections forty-five to forty-six D, inclusive, of said chapter and similar societies organized hereafter may exercise all the rights, powers and privileges prescribed for such society under said chapter as in effect immediately preceding the effective date of this act."

ninety days of adoption as was then required by § 35. The judge concluded that under the amended by-law the plaintiffs are not members of the Association and are not entitled to the benefits afforded by the Association. The plaintiffs, however, maintain that § 45, which requires filing within thirty days, is determinative of the issue. They argue that the failure of the Association to file the amendment within the thirty day period rendered it inoperative.

We think that the judge erred in finding former § 35 applicable and that the plaintiffs are correct in maintaining that the Association is a § 45 corporation. Section 45 applies to two classes of organizations: (1) "Domestic fraternal benefit corporations governed by direct vote of their members and limiting their membership as provided in section 4,"[4] and (2) "domestic fraternal benefit corporations limiting their membership to the permanent employees of cities or towns, the commonwealth or the federal government, and not paying death benefits, but paying annuities or gratuities contingent upon disability or long service . . . ." Because it limits its membership to municipal employees and ex-employees, the Association belongs to class (1) of § 45. The Association argues, however, that the clause "and not paying death benefits," applies to both classes, and that since the Association does pay death benefits, the clause takes the Association out of the scope of § 45. The argument is answered by *Metropolitan Dist. Police Relief Assn. Inc.* v. *Commissioner of Ins.* 347 Mass. 686, where, concerning a similar association, it was held that, although the increased benefits removed the association from § 46, the payment of death benefits did not prevent the application of § 45, since the limiting clause affected only the second class of organizations, that is, "domestic fraternal benefit corporations limiting their membership to the permanent employees of cities or towns." Since the defendant Association clearly is an organization composed of other than permanent employees, and belongs to class (1) of § 45,

---

[4] Section 4 refers, inter alia, to corporations which limit their "membership . . . to the employees or ex-employees of cities or towns . . . ."

it was unaffected by the limiting language concerning the payment of death benefits.

Although the Association is a § 45 corporation, we do not agree with the plaintiffs that it was fatal to the amendment for the Association not to have filed a copy of it with the Commissioner of Insurance within thirty days of adoption as required by § 45. The section does not require filing for the purpose of obtaining the Commissioner's approval, without which an amended by-law could not take effect. While the revision of c. 176, as it affects non-§ 45 corporations, now calls for the filing of amendments as a means of obtaining the Commissioner's validating approval (G. L. c. 176, § 10, as appearing in St. 1958, c. 540, § 1), no similar requirement was added to § 45 which was preserved in its old form by St. 1958, c. 540, § 2. Had the Legislature intended that the purpose of the § 45 filing requirement was to get approval in order to make the amendment valid, it could easily have done so, when revising the law of fraternal benefit societies in 1958, by inserting into § 45 the language that was used in the current § 10. The absence of such language in § 45, in contrast with its presence elsewhere in the statute, leads us to conclude that the filing required of § 45 corporations is for the purpose of giving the Commissioner and through him the interested public notice of by-law changes and not to obtain the Commissioner's approval of them. On this basis, the Association's by-law amendment adopted on March 30, 1953, cannot be said to be invalid for failure to obtain timely approval since no approval was required. The late filing of the change on May 4, 1953, delayed notice of the change but did not render the amendment ineffective. This branch of the plaintiffs' argument, therefore, must fall.

We now turn to the substantive effect on the plaintiffs of the 1953 amendment, which purported to redefine Association membership so as to exclude reserve officers who resign before becoming regular officers. By its terms, a reserve officer joining the department since 1953 knows that he will be dropped from the Association's rolls should he resign

from the department before becoming a regular officer. Such a redefinition of membership is a proper exercise of the Association's power to amend its by-laws.

It is quite another matter, however, to apply the redefinition retroactively so as to affect reserve officers who had resigned from the department prior to the amendment. Section 45 associations may indeed reduce the benefits available for all members (see *Delaney* v. *Ancient Order of United Workmen,* 244 Mass. 556; *Nunes* v. *Medeiros,* 285 Mass. 223) or redefine, for all members, the conditions of recovery (see *Goldman* v. *Commercial Travellers E. Acc. Assn.* 302 Mass. 74). Where the changes are reasonable and not arbitrary, an association may exact compliance from its members. Compliance, however, "means doing what the by-laws may require the member to do, not submission to seeing his only inducement to do it destroyed." *Newhall* v. *American Legion of Honor,* 181 Mass. 111, 117. We think that the Association's interpretation of the by-law amendment amounts to an expulsion of the plaintiffs without recourse to the Association's rules for expulsion. In thus attempting to exclude a small group of members in good standing from participating in its benefits, the Association is acting unreasonably, arbitrarily, and in violation of the essence of the contracts between it and the plaintiffs. To allow the Association's view to prevail would indeed be to assist in the destruction of the very inducement that brought the plaintiffs originally into the Association.

We conclude that, while the by-law as amended may be prospectively valid, it may not be applied to defeat the rights of the plaintiffs. The decree of the Superior Court must be reversed. A decree should be entered declaring that the Association is governed by former G. L. c. 176, § 45, that the plaintiffs are members of the Association, and that they are entitled to whatever benefits or rights are derived from membership if, within sixty days after rescript, they remit to the Association dues covering the period from 1961 to the date of payment. The plaintiffs are to have costs of appeal.

*So ordered.*